UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAMONT MCCLURE,

              Petitioner,                      CIVIL ACTION NO. 07-13492

          v.                           DISTRICT JUDGE JOHN CORBETT O'MEARA

JAN TROMBLEY,                    MAGISTRATE JUDGE VIRGINIA MORGAN

              Respondent.

_____/

**REPORT AND RECOMMENDATION TO
DENY AMENDED PETITION FOR WRIT OF HABEAS CORPUS (D/E #13),
DENY A CERTIFICATE OF APPEALABILITY and CLOSE CASE**

**I. Introduction**

      Petitioner, a state inmate currently incarcerated at the Gus Harrison Correctional Facility in Adrian, Michigan, filed a *pro se* petition for a writ of habeas corpus on August 20, 2007, alleging that he is incarcerated in violation of his constitutional rights (D/E #1). Petitioner was convicted in 2002 of second-degree murder, M.C.L. § 750.317, felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b. He was sentenced to thirty to fifty years imprisonment on the murder conviction, three to five years imprisonment on the felon in possession conviction, and two years imprisonment on the felony-firearm conviction. Respondent filed a response in opposition to the petition on February 27, 2008 (D/E #17) and petitioner filed a reply to that response on March 25, 2008 (D/E #19).

      On December 8, 2008, petitioner filed a motion to amend his petition and to

-1-

stay the case in order for him to return to state court to exhaust certain claims (D/E #8).  On

December 22, 2008, the Honorable John Corbett O'Meara denied petitioner's motion to amend,

but granted his request to stay the proceedings (D/E #10).  In that opinion and order, Judge

O'Meara ordered that the petition would be stayed provided that petitioner: (i) presented his

claims in state court within sixty days of the order staying the petition and (ii) asked the court to

lift the stay within sixty days of exhausting his state-court remedies.

On July 15, 2010, petitioner filed an amended petition for writ of habeas corpus (D/E

#13).[1]  Respondent filed a response in opposition to that amended petition (D/E #17) and

petitioner filed a reply to that response (D/E #19).  The matter was referred to this court for a

report and recommendation on May 18, 2011 (D/E #20).  For the reasons discussed below, this

court now recommends that petitioner's Amended Petition for Writ of Habeas Corpus (D/E #13)

be **DENIED**, petitioner be denied a certificate of appealability, and the case be closed.

## II. Background

### A. Trial

As described by the Michigan Court of Appeals in its opinion denying petitioner's appeal

of right, the operative facts in this case include the following:

> This case arises out of a fatal shooting shortly after midnight in a Coney Island
> restaurant in Detroit following an altercation between various individuals while
> patronizing the restaurant.  We shall now summarize the relevant testimony of
> trial witnesses with respect to the circumstances that evolved around and at the
> time of the shooting.

---

[1] The amended petition was originally construed by the District Court as a motion to
reopen the case and to amend the petition.  Both motions were granted and the stay was lifted.
(D/E #14)

-2-

Andre Miller testified that he went to the restaurant along with the victim Jonathan Miller and Jason Goodman to get something to eat.[2]  Miller described the restaurant as having bulletproof glass where you order your food and about four rows of booths to sit and eat.  The victim, Miller, and Goodman ordered their food and the victim and Goodman sat down at a booth while Miller played a video game.  At that point in time, there were a male and female sitting in a booth across from the victim and Goodman, and another male, described as a vagrant, was just standing around inside the restaurant.  From his vantage point at the nearby video machine, Miller heard Goodman say: "What, you have a problem...."  The statement was directed to the male and female in the adjacent booth.  Miller testified that the male and female then left the restaurant.  Miller identified the male as being defendant.

Ten minutes later, according to Miller, a tall, skinny, light-skinned black male (hereinafter "unknown male") entered the restaurant followed immediately by defendant. Miller described defendant as having an "evil expression" on his face. Defendant, pointing to Goodman, stated: "Who's with this whore-ass light skinned nigger right here?"  Defendant then displayed a firearm.  Goodman was still in the booth, and the victim had joined Miller over at the video machine.  The unknown male then proceeded to punch Goodman in the mouth without saying a word.  The unknown male struck approximately four blows as Goodman cowered. Miller stated that Goodman was unarmed.  The unknown male then turned his attention to the victim all the while defendant was pointing and waving his gun. Miller moved toward a counter away from the victim.

As the victim and the unknown male engaged in a verbal exchange, defendant leaped on a chair in one of the booths and pointed his gun in the direction of the victim.  Miller saw the unknown male and the victim start tussling, and Miller was able to run out the front door of the restaurant.  As Miller ran toward the front door of the restaurant in his escape, he heard gunshots.  Miller said that he heard the gunshots to his rear.  But he did not look back because he feared that he was the target of the shooting.  Outside the restaurant, Miller observed a wall which he jumped over and hid behind.  He heard about three or four additional shots while hiding behind the wall. Miller testified that he then saw defendant and the unknown male exit the restaurant and drive away in a car.  Miller indicated that the unknown male was now limping.

Miller subsequently reentered the restaurant and saw the victim lying on the floor with a gunshot wound to the head area and blood everywhere.  Police soon arrived.  A couple days later, Miller identified defendant from a police

_____

[2]For purposes of clarity, Andre Miller shall be referred to as "Miller" in this opinion, and Jonathan Miller shall be referred to as the "victim."  [footnote in original]

-3-

photograph.  Miller was convinced that defendant had a gun the night of the crime and shot the victim.

On cross-examination, Miller admitted that he did not know exactly what was transpiring behind him as he ran out of the restaurant and heard the gunshots.  On redirect, Miller testified that the only person he saw carrying a gun that night was defendant.

Michael Cooper, a member of the military, testified that he was also in the restaurant at the time of the shooting with a couple of his friends.  Cooper did not know any of the individuals involved in the dispute and shooting at the restaurant. Cooper saw a short black male, 5'6" or so, enter the restaurant with a gun and then fire the weapon.  Cooper stated that the gunshot struck the shooter's friend, apparently the unknown male, because the person struck by the bullet stated: "Well, damn, you hit me."  And the shooter then stated to the victim: "You made me shoot my boy, you gotta' catch one for that."  The shooter, according to Cooper, then pinned the victim between a door and the back of the restaurant and shot him.  Cooper testified that defendant, on observation in the courtroom, looked familiar, but he could not be one-hundred percent certain.

Relevant to this appeal, Cooper testified as follows:

> Q. Well, what about-are you afraid, now, Mr. Cooper?
>
> A. No.
>
> Q. Have you been threatened?
>
> A. Yes, I have.
>
> Q. How were you threatened, sir?
>
> A. Um, I received a letter to my home.  Well, my mother received a letter to her home on Friday, before I came in town.  And a threat was made to an individual who knows my brother.  And he, in turn, contacted my brother and told him.

Cooper testified that the in-court attempt to identify defendant was the first time he had been asked to identify defendant.  Cooper did testify that he had been in the military and out of the country for a period of time before the trial; a six-month stint in Kosovo.  Cooper further testified that the shooter's "friend" was a tall, light-skinned black male.  Directly before the shooting, Cooper saw this tall male scuffling with another individual, not the shooting victim.  Cooper stated that he did not see the shooter in the restaurant when the scuffle was

occurring.  He also testified that he saw no one leave the restaurant while the shooting was taking place.

A forensic pathologist testified that she conducted the autopsy on the victim, and that the victim suffered multiple gunshot wounds.  The victim had been shot in the left forehead, the lower left leg, and the left calf.

Debra Elder testified that she was working at Coney Island at the time of the shooting.  She stated that she saw a male, who was sort of tall, enter the restaurant and punch another guy.  Subsequently, Elder saw a man holding a gun in the air. Elder told police that she had seen the man with the gun in the restaurant earlier with his girlfriend.  [El]der also told police that the man with the gun had a small build, although she denied at trial that she made such a statement to police.  In her statement to police, Elder stated that she saw the man with the gun fire the weapon, and it looked like the bullet struck the ground near the victim's foot. Elder denied making such a statement to police.  She did agree with police statements in which she indicated that the man who threw a punch was tall and did not have a gun.  Elder was asked to look around the courtroom to see if she could identify anyone that was in the restaurant at the time of the shooting.  She responded that no one looked familiar.  Pertinent to this appeal, Elder testified as follows:

> Q. Now, ma'am, did you bring me a letter, today?
>
> A. Yes, I did.
>
> Q. Where did you get that letter from?
>
> A. From my daughter.
>
> Q. And did that letter relate to your being here in court, today?
>
> A. Yes, it did.
>
> Q. Did that letter frighten you?
>
> A. Not really.
>
> Q. Why not?
>
> A. Because, I-you know, I'm gonna get up here and tell the truth or leave it alone. And that's what I'm here for, just to tell the truth.
>
> Q. Where did that letter go to?

A. It came to my house.

Q. Do you know the people whose names are on that letter?

A. No, I don't.

Q. Do you know how they would have gotten your address?

A. No, I don't.

There was additional testimony presented by police officers, along with a stipulation regarding forensic evidence, that has little bearing on our analysis. We do note that police testimony indicated that there were footprints on the top of a table and a chair located in the restaurant. Pursuant to his constitutional rights, defendant chose not to testify at trial, nor did he make any statements to police. During the prosecutor's closing rebuttal argument, he stated:

> And you may be able to tell, but I was a little bit surprised by Ms. Elder's testimony, today, that she's taking back a lot of that stuff that she told the police that night. She said, "I didn't tell them that, I didn't tell them that." Now, certain things she remembers, but unfortunately those have nothing to do with what this man looked like. Her memory is convenient. Why? She got a letter, just like Michael Cooper got a letter. Was she afraid? Well, I would be. She said, "No, I'm not afraid," but her memory is convenient. She told the police a lot more that night, or at least the statement says that she signed, than she's willing to say here, today. Why is that? I'd submit it's because she's afraid, the same way Mr. Cooper told you he got a letter.
>
> Now, why is somebody going to send them a threatening letter unless they're afraid something bad is going to happen to them? Why would they do that?

Defense counsel then objected, arguing that there was "no showing it's a threatening letter. We're going way beyond the evidence." The trial court then instructed the jury that statements made by counsel are not evidence. The prosecutor made no further references to letters.[3]

_____

[3]The jury did reflect its concern about the threats when it sent a note to the judge during deliberations, providing: Due to the allegations of letters, can we request a 15-minute lapse between when we leave and the rest of the courtroom? Or, what kind of security can we expect on the way out? [footnote in original]

-6-

After the jury was selected, but before trial testimony commenced, the prosecutor moved in limine to exclude any reference to a nervous breakdown allegedly suffered by Andre Miller shortly after the crime. The prosecutor informed the trial court that he received the information from Miller's mother who told him that Miller was hospitalized for about three weeks and prescribed medicine. Miller lived for a time in "a group-home type situation" but was no longer taking medicine or under a doctor's care. Miller currently lived with his mother and was receiving out-patient support. The prosecutor maintained that, because there no longer was any type of infirmity or medicine being taken, defendant should be precluded from exploring the matter during trial. The trial court declined to issue a ruling, taking the matter under advisement to be resolved when Miller testified if necessary. The record reflects that the issue was never again broached.

People v. McClure, No. 242323, 2003 WL 22976528, **1-3 (Mich. App. 2003) (footnotes in original).

After the jury had deliberated for an hour and eighteen minutes, the record was reopened:

| | |
|---|---|
| The Court: | This is case number 01 05893, the People versus Lamont McClure. Please identify yourselves . |
| Mr. Beck: | Thomas Beck, on behalf of the People. |
| Mr. Knappmann: | John Knappmann, for the People. |
| Mr. Slameka: | Robert Slameka, for Mr. McClure. |
| The Court: | Let the record reflect that the Court has received a letter from the jurors: "Due to the allegations of letters, can we request a 15-minute lapse between when we leave and the rest of the courtroom? Or, what kind of security can we expect on the way out?" |
| | And let the record reflect that I did discuss this with both sides, off the record. And we are in agreement that we will clear the courtroom. We are going to bring in the jury, and I am going to tell them that when we take their verdict, nobody else will be in the courtroom except the parties involved in this case, and that the court officers will take them out the back way. Is that correct? |
| Mr. Beck: | Yes. |
| Mr. Slameka: | Yes. |

-7-

The Court:　　　　　And I do have another note saying: "We have reached a verdict.  Please advise an answer to our question."  So we'll bring in the jury, right now, and I'll tell them that.

(Jury Trial Transcript, March 12, 2002,  pp. 100-101; attached as D/E #7-5)  The jury subsequently entered and announced a verdict finding petitioner guilty of second-degree murder, M.C.L. § 750.317, felon in possession of a firearm, M.C.L. § 750.224f, and possession of a firearm during the commission of a felony, M.C.L. § 750.227b.

## B. Post-Conviction Proceedings

### 1.  Sentence

On April 10, 2002, petitioner was sentenced to thirty to fifty years' imprisonment on the murder conviction, three to five years' imprisonment on the felon in possession conviction, and two years' imprisonment on the felony-firearm conviction.  (Sentencing Transcript, April 10, 2002; attached as D/E #7-6)

### 2. Appeal of Right

Petitioner then filed an appeal of right in the Michigan Court of Appeals raising the following claims:

I. Defendant was denied his right to effective assistance of trial counsel under US Const VI, XIV and Mich Const 1963 Art 1, Sec 17 where counsel failed to object and file a motion to suppress prejudicial information and evidence and failed to move the court to rule on his motion regarding his only defense.

II. The prosecutor violated Defendant's right to a fair trial when he injected inadmissible evidence into the trial which in fact became unsworn testimony; which resulted in a denial of due process and shifted the burden of proof on the Defendant in violation of due process under the US Const VI and XIV and Mich Const 1963, Art 1, Sec 17, 20.

III. The trial court erred when it failed to protect the Defendant's right to a fair trial.

-8-

(Brief on Appeal for Defendant-Appellant, p.  i; attached as part of D/E #7-7).

On December 18, 2003, the Michigan Court of Appeals denied those claims and affirmed petitioner's convictions.  See People v. McClure, No. 242323, 2003 WL 22976528 (Mich. App. 2003).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the following issues:

> I. The trial court abused its discretion by allowing prejudicial evidence that was not determined through an evidentiary hearing with respect to the probative or prejudicial nature of the elicited testimony thereby denying Defendant his constitutional right to due process and a fair trial.

> II. Defendant was denied [his] state and federal constitutional right to a fair trial when [the] prosecution engaged in repeated instances of prosecutorial misconduct by continuously eliciting highly prejudicial testimony from state witnesses.

> III. Defendant was denied his right to effective assistance of trial counsel under US Const VI, XIV and Mich Const 1963 Art 1, Sec 17 where counsel: 1) failed to object and file a motion to suppress prejudicial information and evidence, 2) move [the court] to rule on his motion regarding his only defense.

> IV. Appellate counsel violated the Michigan minimum standards of criminal appellate defense services, and was negligent and ineffective in assisting as counsel on Defendant's appeal of right.

(Application for Leave to Appeal, dated April 13, 2004; attached as part of D/E #7-8)

On August 31, 2004, the Michigan Supreme Court denied leave because it was not persuaded that the questions presented should be reviewed. People v McClure, 471 Mich. 872, 685 N.W.2d 670 (Table) (2004).

### 3.  First Motion for Relief From Judgment

On or about August 1, 2005, petitioner filed a *pro se* motion for relief from judgment, pursuant to M.C.R. 6.500 *et seq.*, in the state trial court.  In that motion, petitioner argued that his trial counsel was ineffective and petitioner was denied a fair trial where (a) petitioner's Sixth

Amendment right to a public trial was violated when the trial court ordered all public spectators

from the courtroom and locked the doors during the jury's verdict; (b) the witnesses' in-court

identification of petitioner were admitted despite the fact that the identifications were tainted by

improper procedure and no independent basis was established at preliminary exam; (c) the trial

court instructed the jury on the lesser included charge of second-degree murder and undermined

petitioner's defense of identification; and (d) the prosecutor committed repeated instances of

prosecutorial misconduct.  Petitioner also argued that the law of the case doctrine did not bar

litigation of issue of prosecutorial misconduct because the claim was not squarely before the

court of appeals on direct review and could not be "re-litigation" of the same claim.  Petitioner

further argued that, because petitioner had constitutionally ineffective assistance of appellate

counsel on direct review, the court should hear the merits of his claims.  (Petitioner's First

Motion for Relief From Judgment; attached as Exhibit E to Petition for Writ of Habeas Corpus)

On November 4, 2005, the state trial court issued an order denying petitioner's motion

for relief from judgment.  In that order, the trial court found that M.C.R. 6.508(D)(3) barred

consideration of some of petitioner's claims because those claims were raised and rejected in

petitioner's direct appeal of right.  The trial court also found that other claims in the motion

could not be considered because petitioner should have raised them in his appeal as of right and

petitioner has not shown good cause for failing to raise the claims.  According to the trial court,

the alleged ineffective assistance of appellate counsel did not constitute good cause for failure to

comply with the court rules because petitioner's argument regarding appellate counsel being

ineffective was without merit.  The trial court further rejected petitioner's argument that it should

waive the procedural requirements because petitioner was actually innocent.  (Opinion,

November 4, 2005, pp.  4-6; attached as part of D/E #7-9).

Petitioner appealed the trial court decision to the Michigan Court of Appeals, but the delayed application for leave to appeal was denied on March 30, 2007 for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). (People v McClure, Michigan Court of Appeals No. 272306; attached as part of D/E #7-9)

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, but, on July 30, 2007, the Michigan Supreme Court denied petitioner's application for leave to appeal because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). People v McClure, 479 Mich. 864, 735 N.W.2d 249 (2007).

### 4. Petition for Writ of Habeas Corpus

On August 20, 2007, petitioner commenced this action, pursuant to 28 U.S.C. § 2254, by filing a petition for writ of habeas corpus (D/E #1). In that petition, petitioner presented the following grounds as a basis for relief:

> I. Petitioner was denied his [Sixth Amendment] right to a public trial when the trial judge closed the proceedings.

> II. Petitioner was deprived of effective assistance of counsel on trial.

> III. The lesser included offense charge undermined Petitioner's defense, depriving him of his right to a fair trial.

> IV. The prosecutor committed misconduct in closing argument by referring to threats and letters that [were not] admitted in evidence.

(D/E #1, pp. 4-5)

Respondent filed a response in opposition to the petition on February 27, 2008, arguing that petitioner's claims were either procedurally defaulted or meritless. (D/E #17) Petitioner filed a reply to that response on March 25, 2008, in which he reiterated his earlier claims and arguments (D/E #19).

-11-

### 5. Motion to Amend Petition and Stay Case

On December 8, 2008, petitioner filed a motion to amend his petition and to
stay the case in order for him to return to state court to exhaust certain claims (D/E #8).  On
December 22, 2008, the Honorable John Corbett O'Meara denied petitioner's motion to amend
but granted his request to stay the proceedings (D/E #10).  In that opinion and order, Judge
O'Meara ordered that the petition would be stayed provided that petitioner: (i) presented his
claims in state court within sixty days of the order staying the petition and (ii) asked the court to
lift the stay within sixty days of exhausting his state-court remedies.

### 6. Second Motion for Relief From Judgment

Following the issuance of the stay, petitioner filed a second motion for relief from
judgment in state court pursuant to M.C.R. 6.500.  In that motion, petitioner argued that he is
entitled to a new trial in light of newly discovered evidence.  The purported newly discovered
evidence was an affidavit of Jason Goodman, a witness to the altercation in this case, in which
Goodman stated that he observed petitioner on September 3, 2008 and realized petitioner was
not the man who shot the victim.  Goodman's affidavit also provided that he never had an
opportunity to observe petitioner earlier because Goodman had fled the area out of fear prior to
petitioner's trial.

On September 8, 2009, the circuit court denied petitioner's second motion for relief from
judgment.  As found by that court, petitioner's newly discovered evidence did not warrant a new
trial because petitioner did not demonstrate that the alleged newly discovered evidence would
make a different result probable at trial.  (Opinion and Order, September 8, 2009; attached as
part of D/E #18-2)

Subsequently, petitioner filed an application for leave to appeal the denial of his motion

for relief from judgment in the Michigan Court of Appeals.  That application was denied on

December 30, 2009:

> The Court orders that the motion to remand for an evidentiary hearing is
> DENIED.
>
> The delayed application for leave to appeal is DENIED for failure to meet the
> burden of establishing entitlement to relief under M.C.R. 6.508(D).

(People v. McClure, No. 294845 (Mich. Ct. App. Dec. 30, 2009); attached as part of D/E #18-2).

Petitioner then filed an application for leave to appeal that decision in the Michigan

Supreme Court.  However, on June 28, 2010, the Michigan Supreme Court denied that

application:

> On order of the Court, the application for leave to appeal the December 30, 2009
> order of the Court of Appeals is considered, and it is DENIED, because the
> defendant's motion for relief from judgment is prohibited by MCR 6.502(G).  The
> motion to remand is DENIED.

People v. McClure, 486 Mich. 1044, 783 N.W.2d 364 (Mich. 2010).

### 7. Amended Petition for Writ of Habeas Corpus

On July 15, 2010, petitioner filed an amended petition for writ of habeas corpus (D/E

#13).[4]  In the amended petition, petitioner alleges:

> I.  Petitioner was denied his Sixth Amendment right to a public trial guaranteed
> by the United States Constitution and the Michigan Constitution.  US Const Am
> VI, XIV, and failure to address his claim will result in a miscarriage of justice
> where petitioner submits a "free standing" claim of actual innocence to pass
> through the gateway.

―――――――――――――

[4]The amended petition was originally construed by the District Court as a motion to
reopen the case and to amend the petition.  Both motions were granted and the stay was lifted.
(D/E #14)

-13-

II.  Petitioner was deprived of the effective assistance of trial counsel guaranteed
by the Sixth Amendment of the United States Constitution and the Michigan
Constitution.  US Const. Am VI and failure to address his claim will result in a
miscarriage of justice.

     A.     The in-court identification was unduly suggestive and had
              no independent basis.  US Const. XIV.

     B.     Failure to object to the jury instructions for the
              lesser-included charge of second degree murder.  US
              Const. Amend V, XIV.

     C.     Failure to object to the prosecutorial misconduct[.]  US
              Const. Amend XIV.

III.  Petitioner was deprived of a fair trial where lesser-included offense charge to
the jury undermined petitioner's defense, which violated his constitutional right to
a fair trial guaranteed by the United States Constitution and the Michigan
Constitution.  US VI, XIV and failure to address his claim will result in a
miscarriage of justice where petitioner submits a "free standing" claim of actual
innocence to pass through the gateway.

IV.  Petitioner's right to a fair trial was violated when prosecutor injected
inadmissible evidence into his trial which in fact became unsworn testimony; a
denial of due process, and shifted the burden of proof on petitioner, in violation of
due process under the U.S. Const. VI and XIV, and Mich Const. 1963, Art 1,
[section] 17, 20.

V. Petitioner is entitled to a new trial where newly discovered exculpatory
evidence establishes that Petitioner is imprisoned for a crime that he did not
commit and should be vacated due to insufficient evidence under Michigan
Constitution. US Const. 1963, Art. 1, Sec 17, 20, and failure to address his claim
will result in a miscarriage of justice where Petitioner submits a "free standing
claim" of actual innocence.

VI. Petitioner was denied his state and federal constitutional right to a fair trial
guaranteed by the United States Constitution of 1963 (sic), Article I, Sec. 17 and
20, where newly discovered evidence establishes that the prosecution suppressed
exculpatory evidence in violation of Brady and failure to address this claim will
result in a miscarriage of justice where Petitioner submits a "free standing" claim
of actual innocence to pass through the gateway.

VII. Petitioner is entitled to have his conviction vacated due to insufficient
evidence where newly discovered exculpatory evidence establishes that Petitioner

-14-

is actually innocent and imprisoned for a crime he did not commit under the U.S. Const. VI and XIV, and Mich. Const. 1963, Art 1, Sec 17, 20.

Respondent filed a response in opposition to that amended petition, in which respondent incorporated earlier arguments and asserted that petitioner's newer claims were both procedurally defaulted and meritless (D/E #17). Petitioner then filed a reply to that response, in which he argued that his constitutional rights had been violated and that the court should decide his claims on their merits (D/E #19).

### III. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent

-15-

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410–11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller–El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.' " Renico v. Lett, ––––U.S. ––––, ––––, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010) (quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); Woodford v. Visciotti, 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, ––– U.S. ––––, 131 S.Ct. 770, 178 L.Ed.2d 624, No.2011 WL 148587, *11 (U.S.2011) ( citing Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.  "[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, ––– U.S. ––––, 131 S.Ct. 770, 178 L.Ed.2d 624.

-16-

**V. Discussion**

**A.  Right to Public Trial**

Petitioner first argues that his right to a public trial was violated when the trial court closed the courtroom to the public when the verdict was pronounced.  Respondent argues that petitioner has procedurally defaulted on this issue and the claim should not be considered.

A claim is procedurally barred if the state court enforces a state procedural rule as an adequate and independent ground to deny relief of a federal constitutional claim.  See Carter v. Mitchell, 443 F.3d 517, 537–38 (6th Cir. 2006).  That rule governs here.  Petitioner first raised his right to public trial claim in a motion for relief from judgment in the state trial court.  The court issued a reasoned order denying relief to petitioner on the basis that petitioner should have raised his claim in petitioner's direct appeal.  The Michigan Court of Appeals and Supreme Court then denied leave to appeal in orders that merely cited Michigan Court Rule 6.508(D).  "[F]orm orders ... citing 6.508(D) are ambiguous," however, so a court must "look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claim.  Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).  The court must therefore look back to the state trial court's order denying relief from judgment.

In its order, the state trial court clearly explained and held that petitioner's right to public trial claim was procedurally barred under state law.  That holding was an adequate and independent state-law ground for the court's decision and petitioner's claim is therefore procedurally defaulted.  As a result, the court may not grant relief on the claim unless petitioner can establish "cause for the default and prejudice resulting from the default, or that a miscarriage

of justice will result from enforcing the procedural default."  Seymour v. Walker, 224 F.3d 542, 550 (6th Cir. 2000).

Petitioner argues that his appellate counsel's ineffectiveness establishes cause for his failure to raise the claims in his direct appeal.  "Attorney error may constitute cause if it rises to the level of constitutionally ineffective assistance of counsel."  Willis v. Smith, 351 F.3d 741, 745 (6th Cir. 2003).  In order to establish ineffective assistance of appellate counsel, petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense."  O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994).  It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  See Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).  The Supreme Court explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel."  United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail."  See Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting Barnes, 463 U.S. at 751–52)).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome."  Monzo v. Edwards, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an issue

-18-

which was obvious from the trial record and would have resulted in reversal on appeal.  See Meade v. Lavigne, 265 F.Supp.2d 849, 870 (E.D. Mich. 2003) (Tarnow, J.).

Here, as discussed below, petitioner's right to public trial claim was not a certain outcome in petitioner's favor and not clearly stronger than those issues presented on appeal. Accordingly, petitioner's claim of ineffective appellate counsel does not constitute cause to excuse his procedural default.  The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI; see also In re Oliver, 333 U.S. 257, 278, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (holding this right to be binding on the states through the due process clause of the Fourteenth Amendment).  "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions."  Waller v. Georgia, 467 U.S. 39, 46, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (internal quotation marks and citations omitted).  In light of these concerns, to justify the closure of a courtroom over the objections of a defendant, "the party seeking to close [a public] hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure."  Id. at 48, 104 S.Ct. 2210 (applying the test set forth in Press-Enterprise Co. v. Superior Court, 464 U.S. 501, 510, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984), to a Sixth Amendment public trial claim).

In this case, the trial court did not make any specific findings regarding the need to close the courtroom and, instead, closed the courtroom after the jury expressed some safety concerns

and the court discussed the issue with both sides off the record and counsel agreed.  In light of the absence of on-the-record findings by the trial court, it is difficult to discern whether it was necessary for the courtroom to be closed to all spectators during the verdict.  However, while the right to a public trial is an important structural right, it is also one that can be waived when a defendant fails to object to the closure of the courtroom.  Johnson v. Sherry, 586 F.3d 439, 444 (6th Cir. 2009).  Given the failure to object and apparent agreement with court's decision by trial counsel in this case, as well as the presence of other, stronger claims on appeal, petitioner cannot show that his appellate counsel's performance was deficient for failing to raise the issue of petitioner's right to a public trial.

Assuming *arguendo* that petitioner can show that his appellate counsel's performance was deficient, petitioner would still have to demonstrate actual prejudice resulting from that performance.  Notwithstanding the fact that a substantive public trial claim is not subject to harmless error review and prejudice is presumed, a petitioner asserting that counsel was ineffective for failing to object to a courtroom closure must still establish prejudice under Strickland, *i.e.* that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different.  See Purvis v. Crosby, 451 F.3d 734, 740-43 (11th Cir. 2006); Tillman v. Bergh, No.  2:06-CV-11555, 2008 WL 6843654, *14 n. 5 (E.D. Mich. July 2, 2008) (Komives, M.J.).  Here, petitioner points to no harm flowing from the brief closure of the courtroom.  All of the participants were present, including his counsel, and the trial had been completed.  All that remained was the reading of the verdict, which had already been reach prior to the court being closed.  Given those circumstances, petitioner cannot satisfy the second prong of his ineffective assistance of appellate counsel argument and that argument cannot constitute cause to excuse his procedural default.

-20-

Petitioner also seeks to excuse his procedural default by asserting his actual innocence on the basis of newly discovered evidence. If petitioner's newly discovered evidence supported a credible claim of actual innocence, it could excuse his procedural default in order to avoid a miscarriage of justice. See Schlup v. Delo, 513 U.S. 298, 314–17, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To show that his case is the "extraordinary" one warranting application of this exception, petitioner must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" which can take the form of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Id. at 321, 327, 115 S.Ct. 851. Schlup "does not require absolute certainty about the petitioner's guilt or innocence," but it "is [a] demanding [standard] and permits review only in the extraordinary case." House v. Bell, 547 U.S. 518, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006) (internal quotation marks omitted). A petitioner "must produce evidence of innocence so strong that the court can not have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." Allen v. Yukins, 366 F.3d 396, 405 (6th Cir. 2004) (internal quotations and citations omitted). In reviewing such a claim, the district court "is not bound by the rules of admissibility that would govern at trial," and the habeas court may have to make some credibility assessments. Schlup, 513 U.S. at 324, 327, 330, 115 S.Ct. 851.

As discussed above, petitioner's newly discovered evidence consists of an affidavit signed by Jason Goodman. In an affidavit dated September 18, 2008, Jason Goodman stated that he was present during some of the relevant events on July 16, 2000 and that he was attacked by

-21-

an unknown male after some hostile words were exchanged.  (Goodman Affidavit, ¶¶2-4)[5]

Goodman also stated that he observed another unknown male with a gun and that the second

man fired a shot, hitting the first man.  (Goodman Affidavit, ¶ 5)  Goodman further stated that he

then ran out of the restaurant and was later told by Andre Miller that the man with the gun had

killed Jonathan Miller.  (Goodman Affidavit, ¶ 5)  According to Goodman, after failing to a

make a positive identification of the shooter at a police station two or three days later, he decided

to flee to North Carolina out of fear.  (Goodman Affidavit, ¶¶ 6-7)  Goodman  returned to the

Detroit area after learning that petitioner had been convicted.  (Goodman Affidavit, ¶ 8)

However, while incarcerated at the same prison as petitioner on September 3, 2008, he had the

opportunity to observe the petitioner and he instantly knew that petitioner was not the killer.

(Goodman Affidavit, ¶¶ 11-13)  Miller also stated in his affidavit that he had not been threatened

and that he was providing the affidavit solely because it was the truth.  (Goodman Affidavit, ¶

17)

 Here, although petitioner's new evidence tends to undercut the prosecution's

identification evidence, it is not the kind of "exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence" that is typically necessary to obtain this

relief.  McCray v. Vasbinder, 499 F.3d 568, 571 (6th Cir. 2007) (internal quotation marks

omitted).  Goodman's affidavit was provided over eight years after the shooting and such

delayed affidavits must be "treated with a fair degree of skepticism"  Herrera, 506 U.S. at 423, as

memory fades with time.  Additionally, while Goodman's affidavit is clear, any subsequent

testimony by him would be subject to cross-examination and impeachment, in addition to being

_____

[5]Jason Goodman's Affidavit is docket entry #9 in this case and Exhibit A to the amended
petition.

weighed against the testimony of the witnesses presented by the government.  Finally, as noted

by the state circuit court, Goodman unnecessarily and interestingly volunteered that his affidavit

was being given without threat or fear while the record suggests other instances of witness

tampering.  Those circumstances weaken the probative value of Goodman's affidavit and

petitioner's claim of actual innocence.  Overall, this court finds that petitioner cannot meet the

demanding standard for excusing a procedural default in order to avoid a miscarriage of justice.

### B.  Jury Instruction on Second-Degree Murder

Petitioner also argues that his constitutional rights were violated and he was denied a fair

trial by the inclusion of the lesser included offense of second-degree murder in the jury

instructions.  Respondent argues that petitioner's argument on this issue has been procedurally

defaulted.

This court finds that petitioner's claim is procedurally defaulted for the same reasons

discussed above with respect to his claim based on a right to a public trial.  Both arguments were

untimely raised for the first time in petitioner's motion for relief from judgment and that motion

was denied on procedural grounds rather than on the merits, which were never considered.  The

state trial court clearly held that petitioner's claims were procedurally barred under state law

because petitioner should have raised his claims in his appeal of right and there was no cause for

excusing the failure.  As discussed above, that holding was an adequate and independent

state-law ground for the court's decision and precludes habeas review.  This court also finds that,

for the same reasons discussed above, that petitioner cannot establish cause for the default and

prejudice resulting from the default based on ineffective assistance of appellate counsel or that a

miscarriage of justice would result from enforcing the procedural default.  Accordingly,

petitioner's claim based on the second-degree murder instruction is procedurally defaulted and cannot be considered.

Moreover, to the extent plaintiff's claim is considered on its merits, it should also be rejected.  A defendant's due process rights may be violated if the jury is instructed on an offense not included in the indictment and the defendant did not have notice that she might be charged with that offense.  See, *e.g.*, Schmuck v. United States, 489 U.S. 705, 717-18, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989).  However, an instruction on a lesser included offense may be given over the defendant's objection when the defendant is charged with the greater offense because the defendant has sufficient notice that she may also have to defend against the lesser charge. Seymour v. Walker, 224 F.3d 542, 558 (6th Cir. 2000).  Accordingly, because petitioner was charged with first-degree murder, he was on notice to defend against second-degree murder as well.  Second-degree murder is a lesser included offense of first-degree murder in Michigan: "[f]irst degree and second degree murder are the same crimes except that first-degree murder has the additional elements of premeditation and deliberation."  Brazzell v. Warden, 201 F.3d 440 (table), 1999 WL 1204795, at *4 (6th Cir. 1999) (internal quotations omitted); see also Whitley v. Wolfenbarger, No. 2:08-CV-14172, 2010 WL 6184870, *12 (E.D. Mich. Aug.12, 2010) (Komives, M.J.).

### C.  Prosecutorial Misconduct

Petitioner further argues that his right to due process was violated when the prosecutor introduced inadmissible evidence into the trial and commented on that evidence during closing arguments.  Respondent asserts that there was no misconduct and, even if there were, the misconduct was harmless.

-24-

Petitioner raised this argument as part of his direct appeal.  In response the Michigan

Court of Appeals stated:

> Defendant argues that the prosecutor committed misconduct by referencing the
> threats and letters during closing argument and by indicating that Cooper's and
> Elder's inability to positively identify defendant was affected by the threats.
> Defendant maintains that there was no evidence to support the prosecutor's
> comments as the letters were not admitted into evidence and Cooper and Elder
> both testified that their testimony was not affected by the threats. Additionally,
> defendant complains that the prosecutor improperly indicated that Cooper's and
> Elder's testimony confirmed Miller's identification of defendant.
>
> The test for prosecutorial misconduct is whether a defendant was denied his right
> to a fair and impartial trial.  People v. Rodriguez, 251 Mich.App 10, 32; 650
> NW2d 96 (2002).  As noted earlier, prosecutors are free to argue the evidence and
> all reasonable inferences from the evidence as it relates to their theory of the case.
> [internal citation omitted].
>
> There was evidence presented, through the testimony of Cooper and Elder, that
> threatening letters and threats were received; therefore, the prosecutor's comments
> during closing were proper.  Moreover, despite Cooper's and Elder's testimony to
> the contrary, a reasonable inference could arise, from the evidence indicating that
> threats were made, that the failure to positively identify defendant was because of
> the threats, especially in Elder's case where her trial testimony was an almost
> complete retreat from statements made to police which were damaging to
> defendant.  Finally, with respect to the comments that Cooper and Elder
> confirmed Miller's identification of defendant, we conclude that the prosecutor
> was simply indicating that Cooper and Elder confirmed that the "tall" guy was not
> the shooter; the shorter male was the shooter. Reversal is not warranted.

McClure, 2003 WL 22976528 at *6-7.  The Michigan Supreme Court subsequently denied

petitioner's application for leave to appeal in a form order.

Those state court decisions did not result in a decision that was contrary to or involved an

unreasonable application of, clearly established Federal law as determined by the Supreme Court

of the United States.  Nor did they result in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, plaintiff's claim based on prosecutorial misconduct should be denied pursuant to 28 U.S.C. § 2254(d).

According to federal law, to make out a prosecutorial misconduct claim, one must first demonstrate that the prosecutor's conduct and remarks were improper, and then must demonstrate that the impropriety was flagrant and thus violated the defendant's due process rights. Macias v. Makowski, 291 F.3d 447, 452 (6th Cir. 2002). The four factors used to determine whether an impropriety was flagrant are as follows: "(1) whether the conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." United States v. Carroll, 26 F.3d 1380, 1385 (6th Cir.1994).

In this case, while the letters were not introduced into evidence, the prosecutor's direct examination and remarks during closing arguments with respect to them were proper. The letters were discussed during testimony to demonstrate that threats were received by Cooper and Elder, and that there was a possibility that the threats were affecting the testimony. As such, the testimony was not hearsay and did not need to be entered into evidence.[6] Additionally, there was actual testimony that the witnesses were threatened. Given that testimony, the prosecutor's

---

[6]Hearsay is a statement, such as a written assertion, "other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(a), (c). Here, the prosecutor was not offering the letters to prove that they were true. Instead, the letters were used to discuss the potential effect on the witnesses' testimony. See, e.g., City of Westland v. Okopski, 208 Mich.App 66, 77; 527 NW2d 780 (1994) (holding that,when a statement is not offered to prove the truth of the matter asserted, but only that as a result of the statement, a person reacted or responded in a certain way, the statement is not hearsay).

references to threatening letters and threats during closing argument were proper, even though both Cooper and Elder testified that they were telling the truth despite the threats.

Even if the prosecutor's conduct was improper, it was not flagrant and it did not violate petitioner's right to due process.  As discussed above, the relevant factors for determining whether an impropriety was flagrant are (1) whether the conduct tended to mislead the jury or prejudice the defendant; (2) whether the conduct was isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong.  Here, those factors weigh against petitioner.  During closing argument, after defense counsel objected to the prosecutor's characterization of the letters as threatening, the jury was specifically instructed that counsel's statements were not evidence.  The general rule is that a jury is presumed to follow the court's instructions, see United States v. Ham, 628 F.3d 801, 811 (6th Cir. 2011) (citation omitted), and there is no reason why the jury in this case would have been misled or unable to heed these instructions.  Moreover, the letters were only briefly discussed during testimony and closing argument.  The times they were discussed were likely deliberate, but the prosecutor also refrained from mentioning threats again after the trial court sustained defense counsel's objection.  Finally, the evidence against the petitioner was strong and it included eyewitness identification of petitioner as the man holding the gun.

### D.  Ineffective Assistance of Counsel

Petitioner argues that he was denied the effective assistance of counsel during trial when trial counsel failed to object to (1) the in-court identification of petitioner by Andre Miller; (2) the inclusion of an instruction on the lesser included offense of second-degree murder in the jury instructions; and (3) the prosecutorial misconduct with respect to the allegedly threatening letters.  Respondent argues that petitioner's claims are either procedurally defaulted or meritless.

-27-

Each of petitioner's claims will be examined in turn and, for the reasons discussed below, all three claims should be rejected.

### 1. In-court Identification

Petitioner first argues that he was denied the effective assistance of counsel during trial when trial counsel failed to object to the in-court identification of petitioner by Andre Miller. This court finds that petitioner's claim is procedurally defaulted for the same reasons discussed above with respect to his claim based on a right to a public trial. Both arguments were untimely raised for the first time in petitioner's motion for relief from judgment and that motion was denied on procedural grounds rather than on the merits, which were never considered. The state trial court clearly held that petitioner's claims were procedurally barred under state law because petitioner should have raised his claims in his appeal of right and there was no cause for excusing the failure. As discussed above, that holding was an adequate and independent state-law ground for the court's decision and precludes habeas review. This court also finds that, for the same reasons discussed above, that petitioner cannot establish cause for the default and prejudice resulting from the default based on ineffective assistance of appellate counsel or that a miscarriage of justice would result from enforcing the procedural default. Accordingly, petitioner's ineffective assistance claim based on the in-court identification is procedurally defaulted and cannot be considered.

Moreover, to the extent plaintiff's claim is considered on its merits, it should also be rejected. When reviewing ineffective-assistance-of-counsel claims, the court makes a two-part inquiry.

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment.

>Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose results are reliable.

Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

"Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness."  Tibbetts v. Bradshaw, 633 F.3d 436, 442 (6th Cir. 2011) (citation omitted). "The burden is on the defendant to make such a showing by identifying the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," id.. (internal quotation omitted), and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689, 104 S.Ct. 2052.  To establish prejudice, petitioner must show that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different.  Tibbetts, 633 F.3d at 442.

Here, petitioner cannot satisfy either prong of the Strickland standard.  Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures.  Moore v. Illinois, 434 U.S. 220, 227, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).  To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive; if so, courts then determine whether, under the totality of circumstances, the suggestiveness has led to a substantial likelihood of an irreparable misidentification.  Kado v. Adams, 971 F.Supp. 1143, 1147-48 (E.D.Mich.1997) (citing Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).[7]

---

[7]Factors should be considered in determining the reliability of identification evidence include (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior

A criminal defendant has the initial burden of proving that the identification procedure was impermissibly suggestive and it is only after a defendant meets this burden of proof that the burden then shifts to the prosecutor to prove that the identification was reliable independent of the suggestive identification procedure. See Johnson v. Warren, 344 F.Supp.2d 1081, 1090 (E.D.Mich. 2004) (citing English v. Cody, 241 F.3d 1279, 1282-83 (10th Cir. 2001) (citing United States v. Wade, 388 U.S. 218, 240, n. 31, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). If a defendant fails to show that the identification procedures were impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred; so long as there is not a substantial misidentification, it is for the jury or factfinder to determine the ultimate weight to be given to the identification. See United States v. Hill, 967 F.2d 226, 230 (6th Cir.1992); Johnson, 344 F.Supp.2d at 1090.

In light of that governing law, petitioner's argument would be rejected on its merits to the extent they were considered. There is no evidence in this case that Andre Miller's in-court identification of petitioner was unduly suggestive. Accordingly, petitioner can neither show that his trial counsel's performance was deficient or that any deficiency prejudiced him in any way.

## 2. Jury Instructions

Petitioner also argues that he was denied the effective assistance of counsel during trial when trial counsel failed to object to the inclusion of an instruction on the lesser included offense of second-degree murder in the jury instructions. This court finds that petitioner's claim is procedurally defaulted for the same reasons discussed above with respect to his claim based on a right to a public trial and his ineffective assistance claim based on the in-court identification.

description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and, (5) the length of time that has elapsed between the time and the confrontation. Neil, 409 U.S. at 199-200.

The state trial court clearly held that petitioner's claims were procedurally barred under state law because petitioner should have raised his claims in his appeal of right and there was no cause for excusing the failure.  As discussed above, that holding was an adequate and independent state-law ground for the court's decision and precludes habeas review.  This court also finds that, for the same reasons discussed above, that petitioner cannot establish cause for the default and prejudice resulting from the default based on ineffective assistance of appellate counsel or that a miscarriage of justice would result from enforcing the procedural default.  Accordingly, petitioner's ineffective assistance of counsel claim based on the second-degree murder instruction is procedurally defaulted and cannot be considered.

Moreover, to the extent plaintiff's claim is considered on its merits, it should also be rejected.  As discussed above, while a defendant's due process rights may be violated if the jury is instructed on an offense not included in the indictment and the defendant did not have notice that she might be charged with that offense, Schmuck, 489 U.S. at 717-18, an instruction on a lesser included offense may be given over the defendant's objection when the defendant is charged with the greater offense because the defendant has sufficient notice that she may also have to defend against the lesser charge, Seymour, 224 F.3d at 558.  Here, petitioner was charged with first-degree murder and was therefore on notice to defend against second-degree murder as well as second-degree murder is a lesser included offense of first-degree murder in Michigan.  Accordingly, any objection to second-degree murder instruction would have been futile.  The failure to make futile objections cannot constitute deficient performance, see United States v. Steverson, 230 F.3d 221, 225 (6th Cir.2000), and  petitioner's ineffective assistance of counsel claim based on the second-degree murder instruction is therefore meritless.

### 3. Prosecutorial Misconduct

Petitioner further argues that he was denied the effective assistance of counsel during trial when trial counsel failed to object to the prosecutorial misconduct with respect to the allegedly threatening letters.  This issue was raised on direct appeal and rejected by the Michigan Court of Appeals .   Because the Michigan Court of Appeals correctly stated the standard under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), petitioner must now demonstrate that the denial of this claim was an unreasonable application of that standard.

Here, petitioner has failed to so demonstrate.   Under Strickland, counsel is constitutionally ineffective when (1) counsel's performance was deficient and (2) that the deficiency prejudiced the defense.  Id. at 687, 104 S.Ct. 2052.

The Michigan Court of Appeals first determined that trial counsel's performance was not deficient because the questioning regarding threats was proper and any failure to object to the prosecutor's questions was a matter of trial strategy:

> Trial counsel's objection to the prosecutor's discussion of the letters in closing argument, on the basis that there was no showing that the letters were threatening, suggests to us that counsel was fully aware of the existence of letters and the substance of the letters. Not drawing further attention to potentially damaging letters and threats, including possible concerns that the letters could be admitted into evidence or delved into in far greater detail, could clearly be a matter of exercising sound trial strategy.

McClure,  2003 WL 22976528 at *5.  This court finds that the Michigan Court of Appeals decision was a reasonable applicable of the Strickland standard.  As discussed above, this court the prosecutor's questions and remarks relating to the threatening letters were proper.  Similarly, the Court of Appeals properly discussed how petitioner has failed to overcome the presumption that  trial counsel's actions were a matter of trial strategy.  Under either approach, petitioner's ineffective assistance of counsel claim based on prosecutorial misconduct should be rejected.

The Michigan Court of Appeals also found that, even if trial counsel was ineffective in responding to the alleged prosecutorial misconduct, petitioner failed to demonstrate any prejudice and it could not conclude that there was a reasonable probability that, but for trial counsel's error, the result of the proceeding would have been different. McClure, 2003 WL 22976528 at *5. This court also finds that the state court's decision on the issue was not an unreasonable application of the Strickland standard and petitioner's claim can also be denied on that basis. As discussed above, the letters and threats were only briefly discussed during the testimony and closing argument. Moreover, during oral argument, the prosecutor did object to the remarks during closing argument and the jury was instructed that the prosecutor's statement was not evidence. Additionally, there was direct evidence of petitioner's possession of a gun that night and strong circumstantial evidence that he was the shooter. Given those circumstances, any additional objection to the questioning regarding the letters or threats would not have changed the result of petitioner's trial.

### E. *Brady* claim

Petitioner further argues that the government suppressed exculpatory evidence and thereby denied him his constitutional rights. Respondent argues that plaintiff's claim is unexhausted, procedurally defaulted, and meritless.

Petitioner never presented this claim to any state court and, as argued by respondent, it is therefore unexhausted and procedurally defaulted. However, the Honorable John Corbett O'Meara previously ruled that petitioner's Brady claim should be adjudicated on its merits

despite those deficiencies (D/E #14).  Pursuant to the law of the case doctrine[8], this court will therefore consider petitioner's Brady claim on its merits.

Nevertheless, because this claim was not previously raised before or adjudicated by the state courts, the court must review it under pre-AEDPA standards.  Brooks v. Tennessee, 626 F.3d 878, 891 (6th Cir. 2010).  See also Joseph v. Coyle, 469 F.3d 441, 469 (6th Cir. 2006) (explaining that this court reviews "a Brady claim based on evidence disclosed during federal habeas proceedings under pre-AEDPA standards because no state court reviewed the merits of that claim" (citation and internal quotation marks omitted)).

In Brady, the Supreme Court held that a defendant's due process rights are violated where the government withholds evidence favorable to a defendant that is "material either to guilt or to punishment." Id. at 87, 83 S.Ct. 1194.  To demonstrate a Brady violation, a habeas petitioner must establish three elements: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). A habeas petitioner demonstrates prejudice by showing that the suppressed evidence is "material." Id. at 282, 119 S.Ct. 1936.

Here, petitioner's Brady claim is based on an affidavit, dated September 18, 2009, from Jonathan Goodman.  As described above, that affidavit included statements that Goodman, after

_____

[8]"The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Westside Mothers v. Olszewski, 454 F.3d 532, 538 (6th Cir. 2006) (internal quotation omitted). "The doctrine precludes a court from reconsideration of issues 'decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition.'" Id. (internal quotation omitted).

failing to a make a positive identification of the shooter at a police station two or three days later, decided to flee to North Carolina out of fear in 2000 (Goodman Affidavit, ¶¶ 6-7) and that he first had an opportunity to observe petitioner on September 3, 2008, at which point he realized that petitioner was not the killer (Goodman Affidavit, ¶¶ 11-13).

Given the contents of the affidavit, it is clear that petitioner's claim of a <u>Brady</u> violation must be rejected. Goodman himself acknowledge that, while subpoenaed as a witness by the prosecution, he fled the State of Michigan prior to trial because he feared for his safety. Moreover, the most significant part of the affidavit provides that, while they were incarcerated at the same facility on September 3, 2008, Goodman viewed petitioner and realized that petitioner was not the shooter. However, that identification occurred years after the trial and it is therefore impossible for the government to have willfully or inadvertently suppressed that evidence during the trial. Petitioner's evidence is new and favorable to him, but it was not suppressed by the government and his <u>Brady</u> claim should be denied.

### F. Actual Innocence Claims

In petitioner's issues V and VII, he argues that the newly discovered evidence, *i.e.* Goodman's affidavit, establishes that petitioner is actually innocent of the murder and entitles him to a new trial. However, "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." <u>Herrera v. Collins</u>, 506 U.S. 390, 400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." <u>Id.</u> Moreover, citing Supreme Court precedent, the Sixth Circuit has expressly ruled that a free-standing claim of actual innocence based upon newly-discovered evidence does not

warrant federal habeas relief.  See, e.g., Wright v. Stegall, 247 Fed. Appx. 709, 711 (6th Cir. 2007) ("Since the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside the death-penalty context, this court finds that [petitioner] is not entitled to relief under available Supreme Court precedent"); Cress v. Palmer, 484 F.3d 844, 854-55 (6th Cir. 2007); see also Sitto v. Lafler, 279 Fed. Appx. 381, 2008 WL 2224862, *1 (6th Cir. 2008); Tyler v. Mitchell, 416 F.3d 500, 505 (6th Cir. 2005).  Thus, petitioner's claim that he is actually innocent and has newly-discovered evidence to prove it does not state a claim upon which habeas relief can be granted and he is thus not entitled to relief on such a basis.[9]

### G.  Certificate of Appealability

Before petitioner may appeal this decision, a certificate of appealability must issue.  See 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484–85, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller–El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).  In applying this standard, a court may not conduct a full merits review,

---

[9]As discussed above, a claim of actual innocence can serve as a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.  Hodgson v. Warren, 622 F.3d 591, 601 (6th Cir. 2010) (internal quotation omitted); see also Murray v. Carrier, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (holding that a procedural default in state proceedings may be excused "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").  To the extent petitioner's claim of actual innocence are relevant to his procedurally defaulted claims, it is discussed above.

but must limit its examination to a threshold inquiry into the underlying merit of the claims.  Id.

at 336–37.  This court concludes that a certificate of appealability is not warranted in this case

because reasonable jurists could not debate the assessment of petitioner's claims and,

accordingly, petitioner should not be granted a certificate of appealability.

**V. Conclusion**

For the reasons stated above, the court recommends that petitioner's Amended Petition

for Writ of Habeas Corpus (D/E #13) be **DENIED**, petitioner be denied a certificate of

appealability, and the case be closed.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as

provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific

objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140

(1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v.

Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues,

but fail to raise others with specificity, will not preserve all the objections a party might have to

this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir.

1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

　s/Virginia M. Morgan
VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

Dated:  May 27, 2011

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing report and recommendation was served on the Assistant Attorney General by electronic means and the Petitioner by U.S. Mail on **May 27, 2011**.

s/K. Grimes
Case Manager